UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No. 3:22-CR-00030-RLM-MGG |
| | ) | |
| JOHN HOLDEN | ) | |

**UNITED STATES' RESPONSE TO DEFENDANT'S
MOTION TO WITHDRAW PLEA AND DISMISS INDICTMENT**

Comes now the United States of America, by its counsel, Clifford D. Johnson, United States Attorney for the Northern District of Indiana, through Joel Gabrielse, Assistant United States Attorney, and responds to John Holden's motion to withdraw his guilty plea and dismiss the indictment, which should be denied.

**I.   Background**

In early 2021, John Holden was riding in a stolen vehicle when South Bend Police encountered him.  Mr. Holden lied about his name, then fought with officers.  On March 2, 2021, Mr. Holden was charged in state court with Battery to a Police Officer (a felony) and with Resisting Law Enforcement (as a misdemeanor).  Mr. Holden posted bond and was released on pre-trial detention in that case.  In March and July of 2021, Mr. Holden attended court hearings in that felony case.

1

That felony case was pending and active in August of 2021, when Mr. Holden went to a Worldwide Jewelry & Pawn store in South Bend. This store is a federally licensed firearms dealer. Mr. Holden filled out ATF form 4473, seeking to purchase a Taurus 9mm pistol. He answered "No" to the question asking if he was "under indictment or information in any court for a felony." He then signed the form, certifying that his answers were "true, correct, and complete."

In fact, of course, that answer was false, and it formed the basis for the present federal charge. In April of 2022, Mr. Holden was indicted for making a false statement to a licensed firearms dealer in violation of 18 U.S.C. § 922(a)(6).

On August 10, 2022, Mr. Holden pleaded guilty to the charge. He admitted that he had knowingly made a false statement in connection with the attempted acquisition of a firearm from a licensed firearms dealer, and that the statement was intended to or likely to deceive the dealer with respect to a material fact. This Court accepted Mr. Holden's guilty plea and scheduled a sentencing date.

Mr. Holden now seeks to withdraw his guilty plea and also seeks an outright dismissal of the charge against him. Because he argues the indictment is invalid and that, in turn, is reason to withdraw the guilty plea,

the government first explains why the indictment remains valid. Since the indictment is valid, there is no reason to allow Holden to withdraw his guilty plea.

## II. Dismissal of the Indictment

### a. 18 U.S.C. § 922(a)(6)

Much of Mr. Holden's argument for dismissal of his charge is based on a constitutional challenge to a *different* statute: 18 U.S.C. § 922(n). A better starting point, of course, would be the statute that Mr. Holden has already admitted that he violated: § 922(a)(6).

The essential elements for a violation of § 922(a)(6) include: (1) The defendant made a false statement in connection with the attempted acquisition of a firearm from a licensed firearms dealer; (2) The defendant did so knowingly; (3) The statement was intended to or likely to deceive the dealer with respect to any fact material to the lawfulness of the sale of the firearm. Fed. Crim. Jury Instr. 7th Cir. 922(a)(6) (2022 ed.).

As discussed more fully below, the Supreme Court's decision in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, upon which Defendant's argument is based, deals with a right plainly implicated by the text of the Second Amendment, namely the right to carry a handgun. 142 S. Ct. 2111, 2134-35 (2022). Whatever effect *Bruen* might have on 18 U.S.C. § 922(n)'s

prohibition on receiving a firearm or ammunition, it does not affect § 922(a)(6) in the same way since that subsection is a statute meant to punish false statements.

Title 18 U.S.C. § 921, *et seq*. creates a regulatory scheme to "prevent guns from falling into the wrong hands." *Abramski v. United States*, 575 U.S. 169, 172 (2014). It does this by prohibiting certain individuals from purchasing and possessing firearms. *Id.* (citing § 922(g)). It forbids dealers from selling firearms to certain prohibited individuals. *Id.* (§ 922(d)). Relevant to this motion, it also prohibits a buyer from making false statements to dealers. *Id.* Making such false statements are a federal crime because they undermine the regulatory scheme at issue in 18 U.S.C. § 921, *et. seq*.

The statute at issue here, § 922(a)(6), is not aimed at restricting an individual's right to have a firearm but instead to prohibit buyers from making "material misrepresentations" to the dealer, who has certain record keeping obligations. *Id.* at 183-84. It "was enacted as a means of providing adequate and truthful information about firearms transactions." *Huddleston v. United States,* 415 U.S. 814, 824-25 (1974). In other words, its goal is to ensure the "lawfulness of a gun sale" and that the dealer has sufficient information to check the "true purchaser's identity and eligibility

4

for gun ownership." *Abramski*, 573 U.S. at 188. Though it is implicated only as it relates to the sale of firearms, it is a section that addresses false statements rather than the possession of firearms.

Thus, in *Abramski*, the Court rejected the idea that "all's well that ends well" when the Defendant lied on the form and caused the dealer to sell to an individual who (admittedly) could lawfully own a firearm. *Id.* at 189. Were the purpose of the statute to ensure only permissible people ended up with firearms consistent with the Second Amendment, the Court would have found that "all's well that ends well." Instead, the Court noted that argument "misunderstands the way the statute works." *Id.* at 190. The reason for the statute is to ensure the dealer has sufficient information to comply with its legal obligations, and so a defendant can violate it even if the gun ultimately ends up in the hands of someone who truly has no Second Amendment restrictions.

All of this is to say that, whatever impact *Bruen* has on the right to own or carry firearms, defendant has not explained how the Supreme Court's analysis of the Second Amendment invalidates a statute aimed at misrepresentations. *Bruen* no more impacts § 922(a)(6) as it would a prosecution for making a false statement about a firearm to a federal law enforcement officer in violation of 18 U.S.C. § 1001. They might both have

firearms as their subject matter, but they punish the materially false statement rather than the gun possession. Thus, the Supreme Court has twice considered § 922(a)(6) in great detail—in *Huddleston* and *Abramski*—and not so much as intimated that it might be contrary to the Second Amendment.

The section's constitutional validity is confirmed by the way courts have previously treated challenges to § 922(a)(6). Section 922(a)(6) has been used in prosecutions for decades. *See, e.g., United States v. Dillon*, 150 F.3d 754 (7th Cir. 1998) (listing essential elements and affirming a conviction). The statute has also withstood constitutional challenges for a long time. *See, e.g., Graham v. United States*, 2012 WL 611852, *2-3 (N.D. Ind. 2012) (a constitutional challenge was without merit because even the Second Amendment "doesn't give a person the right to lie to acquire a firearm").

The Seventh Circuit has already rejected the gist of Mr. Holden's argument in *United States v. Lawton*, 366 F.3d 550 (7th Cir. 2004). In that case (charged under the related "false-statement" provision in 18 U.S.C. § 924(a)(1)(A)), the petitioner was convicted for failing to disclose two pending felony charges when he filled out a 4473 form at a gun dealer. The petitioner attacked that conviction, claiming first that he should be allowed to obtain a gun (in spite of 18 U.S.C. § 922(n)'s prohibition) under the Second

6

Amendment. Following that reasoning, he then claimed that he should not be criminally responsible for lying about that issue on form 4473. The Court rejected that argument entirely:

> Lawton was convicted not for receiving or transporting a firearm in violation of section 922(n) but for knowingly making a false statement to a federal firearms licensee in violation of section 924(a)(1). Lawton presumes that if the government cannot constitutionally prohibit a person facing felony criminal charges from receiving or transporting a firearm, then it cannot penalize him for falsely representing to a firearms licensee that he was not under felony indictment or information. The premise itself is dubious, however. The Supreme Court has repeatedly said that an individual may be prosecuted for knowingly making a false statement on a matter within the jurisdiction of the government, even if there are doubts about the government's authority to pose the inquiry giving rise to that statement.

*Lawton*, 366 F.3d at 553.

Accordingly, the statute to which Defendant pled guilty is not unconstitutional either on its face or as-applied to Defendant. Mr. Holden still violated § 922(a)(6). At the time he answered "no" on the 4473 form that he was under indictment or information for a felony, he lied. Providing a truthful answer on the form would have caused the federally licensed firearms dealer to not transfer the firearm because of *its* record keeping obligations under the statute. Mr. Holden's lie was material to the lawfulness of the sale regardless of whether § 922(n) is later declared unconstitutional.

Again, *Abramski* dictates the outcome. In *Abramski*, the defendant lied about a different question on the 4473 form. Abramski stated that he was the actual buyer of the firearm when in fact he was buying the gun for his uncle, who could have owned the gun legally. *Abramski*, 53 U.S. at 175. The Supreme Court held that the misstatement on the 4473 form – that Abramski was the actual buyer – was a material misrepresentation even though the actual buyer of the gun – Abramski's uncle – could have purchased it legally. *Id*. at 193. Mr. Holden now advances a similar argument, namely that because § 922(n) is unconstitutional he could have legally possessed a gun, so any misrepresentation regarding his status relative to § 922(n) was immaterial. Just as in *Abramski*, this is not a case where "all's well that ends well, and all should be forgiven." *Id*. at 189. A misrepresentation on a 4473 form that, if answered truthfully, would mean that the sale could not go forward, is a material misrepresentation under § 922(a)(6). *Id*. at 193. Mr. Holden materially misrepresented his status as a person without pending felony charges.

*Bruen* does not implicate a defendant's right to lie on purchasing forms. Accordingly, this Court should deny the motion to withdraw the guilty plea and dismiss the indictment since it remains valid still.

### b. 18 U.S.C. § 922(n)

Defendant's argument instead focuses on a different statute. To try to avoid the fact that he's not charged under 18 U.S.C. § 922(n), Mr. Holden advances a multi-step argument: First, any attempt to prohibit him from personally obtaining a gun—even though he was facing a felony charge at the time—would violate the Second Amendment. Thus, he should be free to lie about that particular topic during the screening process because the lie wouldn't be "material." To support his argument, Mr. Holden points to a single district court opinion, *United States v. Quiroz,* 2022 WL 4352482 (W.D. Tex. Sept. 19, 2022).[1] As noted above, Defendant's statute of conviction is § 922(a)(6), not § 922(n), and so this Court need not delve into the issue. But even if it were to, § 922(n) remains constitutional post-*Bruen*.

*Quiroz* relies on *Bruen*. In *Bruen*, the Supreme Court struck down New York's restrictions on carrying a firearm outside the home because they prevented law-abiding citizens from exercising their Second Amendment right to keep and bear arms in public for self-defense. *Id.* at 2156. The *Quiroz* court analyzed the constitutionality of 18 U.S.C. § 922(n) following *Bruen* and determined that prohibiting those under felony indictment from obtaining a firearm does not align with this nation's historical tradition, and thus §

---

[1] The Department of Justice has appealed that decision to the Fifth Circuit Court of Appeals. *United States v. Quiroz*, No. 4:22-cr-104 (W.D. Tex. Sept. 19, 2022) (Dkt. 83); *see also United States v. Quiroz*, No. 22-50834.

922(n) is unconstitutional. *Quiroz*, 2022 WL 4352482 at *13. But *Bruen* does not provide the support Mr. Holden contends that it does. Justice Alito's *Bruen* concurrence noted that "[o]ur holding decides nothing about who may lawfully possess a firearm or the requirements that must be met to buy a gun." *Bruen*, 142 S. Ct. at 2157 (Justice Alito, concurring).

Even if this Court were to consider constitutionality of § 922(n)—which it need not do—this Court is not bound by *Quiroz* and § 922(n) remains constitutional. Much of *Bruen*'s analysis focuses on whether restrictions on the Second Amendment's right to bear arms have historical support. The first federal statute restricting a person's access to firearms while under indictment was enacted in 1938. *See* Federal Firearms Act of 1938, Pub. L. No. 75-850, § 2(e), 52 Stat. 1250, 1251 (repealed). Historical analogues to § 922(n) "exist in the form of the surety statutes discussed in *Bruen*." *United States* v. *Kays*, No. 5:22-cr-40, 2022 WL 3718519 (W.D. Okla. Aug. 29, 2022). "[The surety statutes presumed that individuals had a right to public carry that could be burdened only if another could make out a specific showing of 'reasonable cause to fear an injury, or breach of the peace.'" *Bruen*, 142 S.Ct. at 2120.

Likewise, § 922(n)'s restrictions are temporary and impact an individual's Second Amendment rights only "during the pendency of the

indictment, a volatile period during which the stakes and stresses of pending criminal charges often motivate defendants to do violence to themselves or others." *United States v. Khatib*, 2012 WL 6086862 at *4 (E.D. Wis. 2012). § 922(n)'s prohibition is narrowly tailored. It does not stop a person from publicly carrying a firearm but rather from receiving a firearm that has been shipped or transported in interstate or foreign commerce (or, as is less commonly charged, shipping or transporting a firearm in interstate or foreign commerce). 18 U.S.C. § 922(n). The § 922(n) restriction is constitutional, as two recent district courts have held either directly or by holding that the comparable Bail Reform Act disarmament provision is constitutional. *See Kays*, 2022 WL 3718519 (W.D. Okla. Aug. 29, 2022); *United States* v. *Perez-Garcia*, 2022 WL 4351967, No. 22-cr-1581, Dkt. No. 41 (S.D. Cal. Sept. 19, 2022).

### III. Withdrawal of the Guilty Plea

Mr. Holden's request to withdraw his guilty plea is based on a new-found desire to try to raise a legal (rather than a factual) defense to his charge.

Mr. Holden lied on an ATF form in August of 2021. The state of the law was obvious and unchallenged: A person under felony indictment or information (such as Holden) was prohibited from obtaining a firearm. 18 U.S.C. § 922(n). The gun dealer was prohibited from selling a firearm to a

11

person under felony indictment or information (such as Holden). 18 U.S.C. § 922(d)(1). Thus, being under felony indictment or information was a "material" matter in the context of firearms transactions. A person attempting to acquire a firearm from a licensed dealer was prohibited from lying about material matters. 18 U.S.C. § 922(a)(6). That was clearly the law in August of 2021, and Mr. Holden's lies clearly violated § 922(a)(6) as a factual matter.

Mr. Holden now raises a legal theory that some of the statutory framework (§ 922(n)) should be considered unconstitutional. As explained above, that claim is a red herring since the statute of conviction (§ 922(a)(6)) remains unaffected by *Bruen* and Defendant is not "innocent" of making a false statement on the "Form 4473." Dkt. 24 at 6. Moreover, Defendant's challenge to § 922(n) is only supported by a single district court opinion from Texas, is contrary to decades of established and binding precedent, and is ultimately unpersuasive. Accordingly, since the indictment is valid, this Court should reject Defendant's motion.

Still, Mr. Holden now says that he would like to try out this new legal theory as a defense to the § 922(a)(6) charge, and he claims that his prior lawyer was ineffective for failing to pursue it. These reasons are insufficient to withdraw a guilty plea.

"Guilty pleas, as we have stressed in the past, should not lightly be withdrawn." *United States v. Brown*, 973 F.3d 667, 715 (7th Cir. 2020). After a court has accepted a guilty plea but before it imposes sentence, the court can grant a motion for withdrawal of a guilty plea if the defendant "can show a fair and just reason for requesting the withdrawal." Fed R. Crim. P. 11(d)(2)(B); *see United States v. White*, 597 F.3d 863, 867 (7th Cir. 2010); *United States v. Bennett*, 332 F.3d 1094, 1099 (7th Cir. 1999).

Mr. Holden's first argument—that *Bruen* renders him actually innocent—fails for a multitude of reasons. First, the Seventh Circuit has upheld a district court finding that the "mere possibility of a change in Supreme Court precedent" "was not a fair and just reason for withdrawing [the defendant's] guilty plea." *United States v. Mays*, 593 F.3d 603, 607 (7th Cir. 2010). The Ninth Circuit has noted that a "marked shift in governing law that gives traction to a previously foreclosed or unavailable argument may operate as a fair and just reason to withdraw a guilty plea." *United States v. Ensminger*, 567 F.3d 587, 592 (9th Cir. 2009). But a "development in non-binding authority such as a district court decision in another circuit . . . is not a change in the law" sufficient to provide a basis to withdraw a guilty plea. *Id.* In the light most favorable to Mr. Holden, he finds himself

13

similarly situated to *Mays* and *Ensminger*. And neither of those situations provide a valid basis for him to withdraw his guilty plea.

Second, while "actual innocence" is a ground for withdrawing a guilty plea, *see United States v. Chavers*, 515 F.3d 722, 725 (7th Cir. 2008), actual innocence "means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 621 (1998) (quoting *Sawyer v. Whitley*, 505 U.S. 33, 339 (1992)). Defendant does not dispute that he factually committed the crime for which he was charged, and therefore this is not a basis to withdraw.

Defendant also asserts that he should be able to withdraw because counsel was ineffective in advising him to plea. Ineffective assistance of counsel is a valid reason to withdraw a guilty plea, *United States v. Merrill*, 23 F.4th 766, 769-70 (7th Cir. 2022), but Defendant has not shown counsel's performance was deficient. To prevail, it is not enough for Defendant to show that counsel "deviated from best practices or most common custom"; rather, counsel's performance is deficient only if it "amounted to incompetence under prevailing professional norms." *Koons v. United States*, 639 F.3d 348, 351 (7th Cir. 2011) (internal quotation omitted). An attorney's representation "need not be perfect, indeed not even very good, to be constitutionally adequate." *Delatorre v. United States*, 847 F.3d 837, 845 (7th Cir. 2017) (internal quotation omitted). As discussed above, counsel's determination that § 922(a)(6) is a valid charge is certainly within the prevailing professional norm.

Indeed, no court has held to the contrary and "the Sixth Amendment does not require counsel to forecast changes or advances in the law." *United States v. Valenzuela*, 261 F.3d 694, 700 (7th Cir. 2001) (internal quotation omitted). Accordingly, counsel's performance was not constitutionally deficient and this case should proceed to sentencing.

## IV.   CONCLUSION

The Court should deny Mr. Holden's motion to withdraw his guilty plea as well as his motion to dismiss the indictment.

Respectfully submitted,

CLIFFORD D. JOHNSON
UNITED STATES ATTORNEY

By:   */s/ Joel Gabrielse*
Joel Gabrielse
Assistant United States Attorney
204 S. Main Street, Room M01
South Bend, IN 46601
(574) 236-8287
joel.gabrielse@usdoj.gov