UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) CAUSE NO. 3:22-CR-30 RLM-MGG |
| | ) |
| JOHN HOLDEN | ) |

OPINION AND ORDER

John Holden entered a guilty plea to one count of making a false statement to obtain a firearm in violation of 18 U.S.C. § 922(a)(6). Mr. Holden now moves to withdraw his guilty plea and to dismiss the indictment, arguing that he's legally innocent in light of New York State Rifle & Pistol Ass'n v. Bruen, 142 S. Ct. 2111 (2022). For reasons explained in this opinion, the court grants Mr. Holden's motion to withdraw his plea of guilty and grants his motion to dismiss the indictment. [Doc. 24].

BACKGROUND

John Holden visited Worldwide Jewelry & Pawn in August 2021 and attempted to acquire a firearm. Mr. Holden was under indictment[1] at the time,

---

[1] Mr. Holden was under felony information in Indiana when he made the statement. For purposes of 18 U.S.C. § 922(n), "indictment" includes "an indictment or information in any court under which a crime punishable by imprisonment for a term exceeding one year may be prosecuted." 18 U.S.C. § 921(a)(14). The court refers to indictments in this opinion rather than differentiating between an information and an indictment.

so federal law prohibited him from receiving any firearm. *See* 18 U.S.C. § 922(n). Mr. Holden had to complete ATF Form 4473 to purchase the firearm. ATF Form 4473 asks whether the purchaser is under indictment and Mr. Holden answered "no." A grand jury later indicted Mr. Holden on one count of making a false statement intended and likely to deceive a licensed firearms dealer with respect to a fact material to the lawfulness of the sale of a firearm, in violation of 18 U.S.C. § 922(a)(6).

Mr. Holden was arrested in June 2022, the same month that the Supreme Court decided New York State Rifle v. Bruen, 142 S. Ct. 2111 (2022). The case clarified how to assess whether a law or regulation violates the Second Amendment. Mr. Holden, on advice of counsel, entered a guilty plea in August 2022. After his guilty plea but before sentencing, Mr. Holden sought and got replacement counsel. He then moved to withdraw his guilty plea and to dismiss his indictment. Mr. Holden argues that he has a complete defense to his § 922(a)(6) charge in the wake of New York State Rifle v. Bruen, so he should be able to withdraw his guilty plea and have the indictment dismissed.

LEGAL STANDARDS

A defendant doesn't have an absolute right to withdraw a guilty plea, United States v. Wallace, 276 F.3d 360, 366 (7th Cir. 2002), but may withdraw a guilty plea after the court accepts the plea and before sentencing "if the defendant can show a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B). Legal innocence may be a fair and just reason for

withdrawing a guilty plea. United States v. Harper, 934 F.3d 524, 528 (7th Cir. 2019). So, too, may ineffective assistance of counsel — ineffective assistance of counsel as to a guilty plea generally means the plea was entered involuntarily. United States v. Wallace, 276 F.3d at 366 (citing Hill v. Lockhart, 474 U.S. 52, 56 (1985)). A defendant receives ineffective assistance of counsel if the attorney's performance was objectively unreasonable, and the performance prejudiced the defendant. Id. (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)).

A defendant can move before trial to dismiss an indictment for failure to state an offense, Fed. R. Crim. P. 12(b)(3)(B). A defendant can move to dismiss for failure to state an offense on the basis that the charged offense is based on an unconstitutional statute. United States v. Seuss, 474 F.2d 385, 387 n.2 (1st Cir. 1973); United States v. Stone, 394 F. Supp. 3d 1, 8 (D.D.C. 2019).

ANALYSIS

Mr. Holden argues that he should be able to withdraw his guilty plea because he received ineffective assistance of counsel and because his legal defense is a fair and just reason to withdraw his guilty plea. First, he contends that § 922(n)'s prohibition against receiving a firearm while under indictment violates the Second Amendment under New York State Rifle v. Bruen, 142 S. Ct. 2111 (2022). Then, he argues that because § 922(n) is unconstitutional, his false statement about whether he was under indictment doesn't concern a fact material to the lawfulness of a firearm sale. Without any false statement about

3

a fact material to the lawfulness of a firearm sale, Mr. Holden asserts that he's legally innocent of the crime charged and the indictment doesn't allege a crime.

*Whether § 922(n) is constitutional*

After Mr. Holden was indicted and before he entered his guilty plea, the Supreme Court announced a new Second Amendment test in New York State Rifle v. Bruen, 142 S. Ct. 2111 (2022). Mr. Holden contends that § 922(n) can't survive the new test.

The Second Amendment provides that "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. The rights protected by the Second Amendment aren't solely collective rights relating to militia service, but are also individual rights. District of Columbia v. Heller, 554 U.S. 570 (2008).

After the Second Amendment was clarified as an individual right, courts generally coalesced around a two-step test for Second Amendment challenges to firearm regulations. First, if the government could show the regulated activity fell outside the scope of the Second Amendment as originally understood, the regulated activity was categorically unprotected, and the challenge failed. New York State Rifle v. Bruen, 142 S. Ct. at 2126 (citing Kanter v. Barr, 919 F.3d 437, 441 (7th Cir. 2019)). If historical evidence was inconclusive or suggested that the regulated activity wasn't categorically protected, courts proceeded to step two. Id. At step two, courts generally applied strict scrutiny analysis if the regulation burdened a core Second Amendment right, like the right to keep a

4

firearm at home for defense of the home. Id. A regulation that didn't burden a core part of the Second Amendment right received intermediate scrutiny. Id.

In New York State Rifle v. Bruen, the Court changed how courts evaluate Second Amendment challenges to firearms regulations. Courts no longer apply means-end scrutiny. Instead, if the Second Amendment's plain text covers some regulated conduct, "the Constitution presumptively protects that conduct." Id. The government may overcome this presumption only by "affirmatively prov[ing] that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." Id. at 2127.

If the challenged regulation addresses a societal problem that's been around since the ratification of the Second Amendment, "the lack of a distinctively similar historical regulation addressing that problem" suggests the regulation doesn't fit in the history and tradition of firearm regulation, so is unconstitutional. Id. at 2131. In the same vein, if "earlier generations addressed the societal problem, but did so through materially different means," the regulation is probably unconstitutional. Id.

History guides the inquiry for regulations that would have been unimaginable at the Second Amendment's ratification, as well. Those regulations require a court to reason by analogy. Id. at 2132–2133. Courts must assess whether the challenged regulation is sufficiently analogous to a traditional regulation, paying particular attention to "how and why the regulations burden a law-abiding citizen's right to armed self-defense." Id. at 2133. Reasoning by analogy "is neither a regulatory straightjacket nor a regulatory blank check." Id.

5

Though the government bears the burden of finding a sufficiently close analogy, it must only find "a well-established and representative *analogue*, not a historical *twin*." Id. (emphasis in original).

Ultimately, as understood in 2022, the Second Amendment protects rights that are "enshrined with the scope they were understood to have *when the people adopted them.*" Id. at 2136 (citing District of Columbia v. Heller, 554 U.S. 570, 634–635 (2008)) (emphasis in original). It follows that post-enactment history clarifies the original public meaning of the Second Amendment, but less so with the passage of time and not at all when the text contradicts historical practice. Id. at 2136–2137.

Mr. Holden argues that § 922(n) poses a burden on his Second Amendment right to keep and bear arms and that the government can't justify the regulation by analogy or other historical comparison. The parties focus on whether the regulation is consistent with history and tradition, seemingly agreeing that the Second Amendment's text plainly covers the regulated activity – receiving a firearm. Receiving a firearm is necessarily a precursor to keeping or bearing a firearm, so Mr. Holden's conduct is presumptively protected by the Second Amendment. See United States v. Quiroz, No. PE:22-CR-00104-DC, 2022 WL 4352482, at *3–4 (W.D. Tex. Sept. 19, 2022) (holding that "to keep and bear Arms" includes receiving arms); United States v. Kays, No. CR-22-40-D, 2022 WL 3718519, at *2–3 (W.D. Okla. Aug. 29, 2022).

The Second Amendment presumptively protects the regulated conduct, so the government must affirmatively show that § 922(n) fits in the history and

tradition of firearms regulations. N.Y. State Rifle v. Bruen, 142 S. Ct. at 2127. The government asserts that the Federal Firearms Act of 1938 provides historical support for § 922(n) because as far back as 1938, Congress restricted a person under indictment from shipping or transporting receipt of a firearm. Federal Firearms Act, Pub. L. No. 75-850, § 2(e), 52 Stat. 1250, 1251 (1938) (repealed).

That Congress limited firearm use by persons under indictment as far back as 1938 doesn't show that § 922(n) is constitutional. Post-ratification history is useful to understand the Second Amendment's original public meaning when it was ratified in 1791. N.Y. State Rifle v. Bruen, 142 S. Ct. at 2136–2137 (citing District of Columbia v. Heller, 554 U.S. 570, 605 (2008)). The more time that passes between ratification and a historical practice, the less insight the historical practice provides. Id. at 2137 ("As we recognized in Heller itself, because post-Civil War discussions of the right to keep and bear arms 'took place 75 years after the ratification of the Second Amendment, they do not provide us as much insight into its original meaning as original sources.' 554 U.S. at 614"). From 1791 to 1938 is wide enough a gulf that the Federal Firearms Act of 1938 doesn't shed much light on the original public meaning of the Second Amendment. United States v. Quiroz, 2022 WL 4352482, at *5 ("Yet the Government fails to explain why regulations enacted less than a century ago count as 'longstanding.'").

Next, the government cites surety laws as an analog to § 922(n). Several states adopted surety laws in the mid-19th century as a way of limiting dangerous persons' access to weapons. N.Y. State Rifle v. Bruen, 142 S. Ct. at

7

2148. Surety laws prohibited a person from carrying a weapon if there was reasonable cause to believe that person posed a risk of injury or breach of the peace. Id. The regulated person could overcome the prohibition if he showed an individualized need to carry a weapon for self-defense, or if he posted a bond. Id.

The government contends that surety laws support § 922(n) in two ways. Just as surety laws regulated potentially dangerous persons, § 922(n) regulates potentially dangerous persons – they only apply to persons under indictment and the pendency of an indictment is a volatile period. United States v. Kays, 2022 WL 3718519, at *4–5. Section 922(n) also poses less of a burden than surety laws; while surety laws regulated mere carrying of a weapon, § 922(n) prohibits only receipt of a firearm. Id. A person under indictment can still possess a firearm so long as he received it before coming under indictment.

Mr. Holden contests the government's analogy to surety laws. He emphasizes that even if § 922(n) and surety laws address the same problem of dangerous or volatile persons, § 922(n)'s restriction is absolute whereas surety laws' prohibition could be overcome. See United States v. Quiroz, 2022 WL 4352482, at *7–8. A person shown to be dangerous could nonetheless carry a weapon by showing an individual need for armed self-defense or by posting a bond. This difference would show that "earlier generations addressed the societal problem, but did so through materially different means," which is "evidence that [the] modern regulation is unconstitutional." N.Y. State Rifle v. Bruen, 142 S. Ct. at 2131. Section 922(n)'s burden is even starker, by Mr. Holden's estimation, because indictments are issued by grand juries, and those grand juries issue

8

indictments in non-adversarial proceedings. Surety laws, on the other hand, allowed a person to challenge the restriction by showing an individualized need or posting a bond. See United States v. Quiroz, 2022 WL 4352482, at *7–8.

The court agrees with Mr. Holden that § 922(n) is meaningfully different than surety laws, so surety laws don't provide the historical support needed to sustain § 922(n). A court analogizing to historical regulations primarily considers whether the modern and historical burden pose comparable burdens on the right of armed self-defense and whether the burden is comparably justified. N.Y. State Rifle &. Bruen, 142 S. Ct. at 2133. Surety laws restricted firearm possession for dangerous persons but their prohibition was surmountable: the regulated person could bear a firearm if he had an individualized need for self-defense or if he posted a bond. Section 922(n) imposes an absolute prohibition. Anyone under indictment is prohibited from receiving a firearm no matter how grave their need for armed self-defense and no matter their willingness and ability to pay a bond. Although an analogy needn't be a "historical twin" and the government's burden isn't a "regulatory straightjacket," the difference between surety laws and § 922(n) is substantial because the laws address the same societal problem of dangerous and volatile persons through materially different means. The analogy serves as evidence that the modern regulation is unconstitutional. Id. at 2131.

The government raises other arguments in favor of § 922(n)'s constitutionality, but none show that § 922(n) survives the Second Amendment challenge. The government argues that § 922(n) is narrowly tailored because it

9

prohibits only receipt of a firearm while under indictment, not the public carrying of a firearm. To the extent this argument addresses means-end scrutiny (it seems to overlap with the comparison of surety laws' burden with § 922(n)'s burden), it is irrelevant since means-end scrutiny isn't a part of the historical inquiry, even if earlier Second Amendment tests included means-end scrutiny. Id. at 2129–2130. The government adds that New York State Rifle v. Bruen only addressed a different sort of firearm regulation under New York law, so it doesn't § 922(n)'s validity *See* id. at 2157 (Alito, J., concurring) ("Our holding decides nothing about who may lawfully possess a firearm or the requirements that must be met to buy a gun."). But the majority's holding didn't only address a New York law; it clarified how courts must analyze all Second Amendment challenges to firearms regulations. *See* id. at 2127. This court can't disregard a new Second Amendment framework merely because it came from a challenge to a different law.

Section 922(n) burdens activity protected by the Second Amendment, and the government hasn't shown that the regulation is consistent with the history and tradition of firearm regulation that "delimits the outer bounds of the right to keep and bear arms." Id. Under the new Second Amendment standard, § 922(n) is unconstitutional.

*Whether § 922(n)'s unconstitutionality is material to § 922(a)(6)*

Mr. Holden's claim of innocence and argument for dismissal then turn on whether the unconstitutionality of § 922(n) is material for purposes of his §

10

922(a)(6) charge. Mr. Holden was indicted for making, in connection with the acquisition of a firearm, a false statement intended or likely to deceive the firearm dealer "with respect to any fact material to the lawfulness of the sale or other disposition of such firearm." 18 U.S.C. § 922(a)(6). Mr. Holden falsely claimed he wasn't under indictment, but Mr. Holden argues that if § 922(n) is unconstitutional, his false statement is immaterial to the lawfulness of the sale.

The government argues that § 922(n)'s validity under the Second Amendment has no bearing on the § 922(a)(6) charge. The government describes § 922(a)(6) as regulating lying, not gun ownership. Some untold number of federal statutes and regulations depend on gun purchasers, sellers, and regulators having accurate information. Section 922(a)(6) maintains the integrity and effectiveness of the regulatory scheme by punishing and deterring lying. The government asserts that "Bruen no more impacts § 922(a)(6) as it would a prosecution for making a false statement to a federal law enforcement officer in violation of 18 U.S.C. § 1001."

The argument that § 922(a)(6) punishes lying takes too broad a view, missing the trees for the forest. Congress ostensibly has the authority to criminalize any sort of lie in connection with the acquisition of a firearm, *see* United States v. Lawton, 366 F.3d 550, 553 (7th Cir. 2004), but the law Congress wrote is narrower. Section 922(a)(6) doesn't prohibit any false statement in connection with the acquisition of a firearm – it prohibits a false statement intended to or likely to deceive "with respect to any fact material to the lawfulness of the sale" of a firearm. 18 U.S.C. § 922(a)(6). Mr. Holden is only criminally liable

11

under § 922(a)(6) for statements that deceive as to any fact material to the lawfulness of a firearm sale, not any false statement whatsoever. The court accepts the government's assertion that § 922(a)(6) is an important part of the regulatory scheme, but § 922(a)(6)'s purpose doesn't allow for prosecution of false statements that don't otherwise meet § 922(a)(6)'s requirements.

The government further contends that Mr. Holden's indictment and guilty plea are supported because § 922(a)(6) has withstood challenges before. For instance, the Supreme Court upheld § 922(a)(6) against a challenge involving the definition of "acquisition." Huddleston v. United States, 415 U.S. 814 (1974). The government doesn't explain, though, how that holding addresses Mr. Holden's unrelated challenge to the statute and indictment.

Second, our court of appeals rejected a challenge to a false statement conviction[2] premised on § 922(n)'s prohibition in United States v. Lawton, 366 F.3d 550 (7th Cir. 2004). In upholding the conviction, the court explained that "an individual may be prosecuted for knowingly making a false statement on a matter within the jurisdiction of the government, even if there are doubts about the government's authority to pose the inquiry giving rise to that statement." Id. at 553. The court also rejected a constitutional challenge to the conviction, explaining that whatever individual rights the Second Amendment might protect, the government has the authority to subject those rights to "reasonable

---

[2] The defendant in United States v. Lawton was convicted of making a false statement to a licensed firearms dealer in violation of 18 U.S.C. § 924(a)(1)(A), not 18 U.S.C. § 922(a)(6).

12

restriction." Id. at 554 (citing United States v. Emerson, 270 F.3d 203, 260–261 (5th Cir. 2001)).

Mr. Holden's circumstances are different. The Lawton court considered a § 924(a)(1)(A) conviction, which prohibits different conduct than § 922(a)(1). Section 924(a)(1)(A) prohibits "knowingly mak[ing] any false statement or representation with respect to the information required by [18 U.S.C. § 921 et seq.] to be kept in the record of [a licensed firearms dealer]." 18 U.S.C. § 924(a)(1)(A). That's a potentially broader class of statements than the statements that are regulated by § 922(a)(6), and that broader class of statements sweeps in a broader class of conduct than does § 922(a)(6). The court also considered the constitutional challenge long before New York State Rifle v. Bruen, much less District of Columbia v. Heller. The court concluded that any Second Amendment rights could be subject to "reasonable restriction." United States v. Lawton, 366 F.3d at 554 (citing United States v. Emerson, 270 F.3d 203, 260–261 (5th Cir. 2001)). It's now obvious that a challenge to a firearm regulation must undergo a more demanding inquiry under New York State Rifle v. Bruen.

Finally, the government asserts that Mr. Holden's argument amounts to saying that "all's well that ends well," but that the Supreme Court has rejected that defense to § 922(a)(6) prosecutions before. *See* Abramski v. United States, 573 U.S. 169 (2014). In Abramski v. United States, the defendant was convicted of a § 922(a)(6) violation after he bought a gun for his uncle and falsely stated to the firearms dealer that he, not his uncle, was the true purchaser. The defendant argued the false statement wasn't about "any fact material to the lawfulness of

13

the sale," because both he and his uncle could lawfully purchase the gun. The court rejected that argument, explaining that even though the true answer to the question wouldn't make the sale unlawful, the fact was still material because the seller needed to know the fact of the purchaser's identity to determine the lawfulness of the sale. Id. at 188–190. The government says Mr. Holden's actions are no different – even if Mr. Holden could lawfully purchase a gun, he can't claim "all's well that ends well." *See* id. at 189.

This comparison doesn't quite hold up. The false statement in Abramski was material because the question of the purchaser's identity *could* yield an answer that would make the sale unlawful. It didn't in Mr. Abramski's case, but the sale would have been unlawful had Mr. Abramski bought the gun for a different uncle who was a convicted felon. *See* 18 U.S.C. 922(g)(1). The same is untrue for Mr. Holden. Section 922(n) violates the Second Amendment, so the question of whether the purchaser is under indictment could receive no answer affecting the lawfulness of the sale.[3] The question was material in Abramski v. United States because it could affect the lawfulness of the sale even if it didn't actually do so; the question here is immaterial because under no circumstances could it affect the lawfulness of the sale.

---

[3]  Another part of the statute, § 922(d)(1), might still render the sale of the firearm unlawful because it prohibits selling a firearm to someone who's known to be or should be known to be under indictment. 18 U.S.C. § 922(d)(1). The court raised this point without forewarning to counsel at the hearing on these motions. Although counsel provided helpful responses, the parties didn't raise any argument about § 922(d)(1) or have the opportunity to fully develop any such argument, so the court declines to consider how § 922(d)(1) might affect Mr. Holden's indictment and guilty plea.

14

Mr. Holden has shown that § 922(n) facially violates the Second Amendment, and he's shown that without § 922(n) prohibiting him from receiving a firearm under indictment, his false statement as to whether he was under indictment was immaterial for purposes of § 922(a)(6).

*Whether Mr. Holden is entitled to relief*

Mr. Holden has shown "a fair and just reason" for withdrawing his guilty plea. Fed. R. Crim. P. 11(d)(2)(B). His arguments based on New York State Rifle v. Bruen provide a claim to legal innocence and depend on neither "the mere possibility of a change in Supreme Court precedent," United States v. Mays, 593 F.3d 603, 607 (7th Cir. 2010), nor a "development in non-binding authority such as a district court decision in another district." United States v. Ensminger, 567 F.3d 587, 592 (9th Cir. 2009). The new Second Amendment test is the law of the land and under that new standard, Mr. Holden can't be criminally liable under § 922(a)(6) for a statement that depends on the constitutionality of § 922(n).

Mr. Holden's indictment must be dismissed, too. A defendant may assert that a particular crime charged is unconstitutional and move to dismiss it on a Rule 12(b)(3) motion. United States v. Underwood, No. 1:20-CR-77-HAB, 2022 U.S. Dist. LEXIS 173857, at *3 (N.D. Ind. Sept. 26, 2022); United States v. Seuss, 474 F.2d 385, 387 n.2 (1st Cir. 1973). Assuming the facts alleged are true, the indictment doesn't state an offense because Mr. Holden wasn't prohibited from receiving a firearm under § 922(n), so his statement didn't concern a fact material to the lawfulness of the firearm sale. The indictment must be dismissed.

15

CONCLUSION

This opinion was drafted with an earnest hope that its author has misunderstood New York State Rifle v. Bruen, 142 S. Ct. 2111. If not, most of the body of law Congress has developed to protect both public safety and the right to bear arms might well be unconstitutional. For one constitutional reason or another, a similar fate has befallen several other laws that Congress adopted with beneficent purposes. But unlike those instances, the decimation of the nation's gun laws would arise from an assumption that our leaders and ratifying legislators in the late 1700s didn't foresee that their descendants might need a different relationship than the founders had between the federal government and the right to bear arms. Yet a glance at the Constitution they were amending shows that they could foresee the growth in population that would change the number of representatives to be elected, that future members of Congress might need higher pay, and that future states might aspire to join the union.

The United States Constitution, as amended and as imperfect as it was, is the legacy of those eighteenth-century Americans; it insults both that legacy and their memory to assume they were so short-sighted as to forbid the people, through their elected representatives, from regulating guns in new ways.

The role of a United States District Court is to apply the law as understood by the United States Supreme Court; today's ruling recognizes that role. But the author of this opinion retains hope that he hasn't accurately grasped the Supreme Court's understanding of the Second Amendment.

The court GRANTS Mr. Holden's motion to withdraw guilty plea and GRANTS Mr. Holden's motion to dismiss the indictment. Mr. Holden's plea of guilty is WITHDRAWN and the indictment DISMISSED.

SO ORDERED.

ENTERED: October 31, 2022

/s/   Robert L. Miller, Jr.
Judge, United States District Court