```
                    IN THE UNITED STATES DISTRICT COURT
                   FOR THE NORTHERN DISTRICT OF INDIANA
                            SOUTH BEND DIVISION


 UNITED STATES OF AMERICA    )
                             )          CAUSE NUMBER 3:22cr00030
      vs                     )
                             )
 JOHN HOLDEN,                )
                             )          OCTOBER 24, 2022
      Defendant.             )




                       TRANSCRIPT OF PROCEEDINGS
              BEFORE THE HONORABLE ROBERT L. MILLER, JR.


 APPEARANCES:


 For the Government:    MR. JOEL GABRIELSE
                        Assistant United States Attorney
                        204 South Main Street
                        South Bend, Indiana 46601


 For the Defendant:     MR. DONALD SCHMID
                        Attorney at Law
                        1251 Eddy Street, Suite 200
                        South Bend, IN 46617




              STENOGRAPHICALLY REPORTED, ECLIPSE SOFTWARE
```

*Debra J. Bonk, Federal Certified Realtime Reporter*
*Debra_Bonk@innd.uscourts.gov / (574)246-8039*

1  **THE COURT:** This is Cause Number 3:22cr00030, **United States versus John Holden,** and we are gathered on two motions. One is Mr. Holden's motion to withdraw his guilty plea and the other is the motion to dismiss the indictment.

Mr. Schmid, they are both your motions so I will invite you to speak first.

**MR. SCHMID:** Thank you, Your Honor.

**(Pause in proceedings.)**

**MR. SCHMID:** Your Honor, as you're well aware now, the case of **Bruen** informed us significantly as to the legal landscape for the Second Amendment. **Bruen** said that when the plain text of the Second Amendment covers an individual's conduct, the Constitution presumptively protects that conduct. In other words, there's a presumption of favor, of not prohibiting conduct involving a firearm possessed by individual citizens.

The government doesn't contest that the plain text covers Mr. Holden's conduct of possessing a firearm while under indictment.

**THE COURT:** The plain text of 922?

**MR. SCHMID:** The plain text of the Second Amendment.

So Justice Thomas and the Supreme Court said that there's really only two considerations that are relevant anymore. Does the Second Amendment cover the conduct at issue? And, secondly, can the government prove that that prohibition

1   or that regulation is consistent with the historical tradition?

2   Only if a firearm regulation is consistent with this

3   nation's historical tradition may a court conclude that the

4   individual's conduct falls outside of the Second Amendment's

5   unqualified command that the right to keep and bear arms shall

6   not be abridged.

7   So that standard requires courts to consider whether

8   historical precedent evinces a comparable tradition of

9   regulation. If no tradition exists or if it's ambiguous, it

10  renders the statute at issue -- in this case, 922(n) and also

11  922(a)(6) as applied to someone attempting to acquire a firearm

12  while under indictment -- that means those statutes are

13  unconstitutional. So the burden rests squarely on the

14  government to show that the regulation at issue here, 922(n)

15  and 922(a)(6), are consistent with this nation's historical

16  tradition of firearms and firearm regulation.

17  And what is the relevant historical time period? The

18  Supreme Court told us in **Bruen** that it's 1791 when the Second

19  Amendment was adopted as the supreme law of the land in our

20  nation. It's not 1938. It's not even 1860. It's 1791. And

21  here, Your Honor, the government can point to no historical

22  tradition that persons under indictment would be flatly

23  prohibited and it would be criminally -- and they would be

24  criminally liable for possessing -- for receiving or possessing

25  or keeping a firearm while they were under criminal indictment

**1** or information.  There simply was no law, not in a state

**2** constitution, not in a state law, not in any kind of regulation

**3** in 1791.

**4** The government points to the surety laws which were

**5** broader and could apply to people who were considered

**6** dangerous.  But as Justice Thomas himself said in the Supreme

**7** Court's majority opinion, the surety laws are very different

**8** from a flat criminal prohibition.  The surety laws only allowed

**9** a person to show they had a need for a firearm.  Or if they

**10** couldn't show a need for a firearm, they simply had to post a

**11** cash bond for a limited period of time in order to continue to

**12** have a firearm.  So the surety laws are absolutely no

**13** precedent, no good argument for trying to prove that there is a

**14** historical tradition of banning people who are under indictment

**15** from having or keeping or receiving a firearm.

**16** The government does a couple of things in its

**17** opposition, Your Honor, both of which I think ultimately fail.

**18** The first thing the government does is cite a number

**19** of cases that are pre-**Heller** and pre-**Bruen**.  Certainly those

**20** cases don't carry any weight.  It wasn't until **Heller** that the

**21** Supreme Court instructed us that the Second Amendment provided

**22** each American citizen with an individual right to keep and bear

**23** arms.  It wasn't until **Bruen** that the Supreme Court constructed

**24** that the two-step analysis that had been widely developed in

**25** the courts of appeal, step number one about the historical

```
 1   tradition, and step number two, a kind of balancing, that was
 2   one step too many.  There is no balancing.
 3           If the conduct is covered by the Second Amendment --
 4   and there's no argument from the government this conduct is not
 5   covered by the Second Amendment -- if there is no historical
 6   tradition, if the government cannot prove convincingly that
 7   there is a historical tradition consistent with this
 8   regulation, then the statute must be held unconstitutional.
 9           And so the second mistake that the government makes
10   in their opposition, beyond citing pre-Heller and pre-Bruen
11   cases, is that the government argues that this statute is a
12   good idea.  You know, it's rational or it's even compelling.
13   But those types of balancing arguments are no longer proper or
14   appropriate.  There is no more balancing.
15           The only relevant issue, Your Honor, is, again, as of
16   1791, can the government prove that there was historical
17   tradition for the precise kind of regulation that is at issue
18   in this case, and they cannot.
19           So, Your Honor -- and let me comment on -- we
20   obviously believe the Quiroz case out of Texas provides a
21   convincing analysis for this Court to look to.
22           There is another case out there which we acknowledged
23   in our opening brief, United States versus Kays, an
24   August 29th opinion out of the Western District of Oklahoma.
25   That case involved two statutes, 922(g)(8) involving persons
```

1  under domestic order, and 922(n), and the Court found that the
2  statutes were constitutional.
3          But if you look at the analysis in **Kays**, Your Honor,
4  it's flawed.  First of all, it's cursory.  It barely, barely
5  addresses the fundamental analysis that's required by **Bruen**.
6          And, secondly, it pins all of its analysis on 922(n)
7  on the surety statute.  And we know from Justice Thomas'
8  opinion in **Bruen** itself that the surety statute doesn't supply
9  historical tradition here.  And we know from the **Quiroz** opinion
10 from a very careful analysis that the surety laws don't supply
11 that historical tradition.
12         To the extent that the -- there's no evidence that
13 the surety laws -- and the government has provided no evidence
14 that there are any surety laws as of 1791.
15         To the extent there was a surety law in 1795, that
16 law was hardly enforced, and the record shows that it was only
17 enforced against African-Americans.  That is not a historical
18 tradition, Your Honor, of general firearm regulation.
19         In any event, Your Honor, the surety laws have that
20 fundamental flaw, which is it's not a flat prohibition and it's
21 not a criminal prohibition.  You could post a bond, and that
22 makes it fundamentally different from 922(n) and 922(a)(6).
23         I want to make clear, Your Honor, that we are arguing
24 two separate things.  First of all, we are arguing that 922(n)
25 is unconstitutional, consistent with **Quiroz**, and that as a

1  result of that, because of the way 922(a)(6) is written --
2  922(a)(6) doesn't say, if you make a lie on an ATF form, then
3  you've committed a crime.  But we both know that's not what
4  922(a)(6) says.  922(a)(6) says you must make a material false
5  statement in connection with the lawfulness of the sale.  And,
6  therefore, if the sale to a person under indictment would be
7  lawful, certainly any statement in connection therewith would
8  not be material.  **Quiroz** says that explicitly.
9           In fact, **Quiroz** is an interesting case.  **Quiroz** is
10 not a case just where the court was considering whether to
11 dismiss an indictment or whether or not to allow a defendant to
12 withdraw a guilty plea.  **Quiroz** is a case that went to trial,
13 and there was an actual jury verdict of guilt that the court
14 overturned with its **Bruen** analysis.
15          The second thing we're arguing, Your Honor, is not
16 only is 922(n) facially invalid under the **Bruen** analysis, but
17 922(a)(6), as applied, is also unconstitutional, and that's
18 because 922(a)(6) prohibits a person from lawfully acquiring a
19 firearm while they're under indictment, as applied.
20          Mr. Holden, he had no other prohibition applicable to
21 him.  He wasn't a convicted felon.  There were no restraining
22 orders.  He had not been dishonorably discharged from the
23 military.  The only thing that could possibly have prevented
24 Mr. Holden as a citizen of the United States from lawfully
25 receiving and possessing a firearm in August of last year was

1  the fact that he was under indictment, presumed innocent but
2  under indictment.
3           And if he answered "yes" on the form, the law would
4  have prohibited him from receiving any firearm.  And,
5  therefore, as applied, 922(a)(6) itself is unconstitutional,
6  Your Honor.
7           Obviously, if the underlying conduct is not criminal
8  because the statute is unconstitutional, Mr. Holden would be
9  innocent, and that, we believe, is a valid and fair and just
10 reason for him to withdraw his guilty plea.
11          Thank you.
12          **THE COURT:**  Let me ask you from a different
13 viewpoint.
14          If a person walks in to a federally licensed firearms
15 dealer and has the form as it exists now -- although, I'm sure
16 it's going to look different in three or four years -- but has
17 the form, isn't the dealer criminally liable if he or she
18 knowingly sells a firearm to a person who is under indictment
19 for a felony?
20          Separate from 922(n), isn't the dealer himself or
21 herself criminally liable for knowingly -- if he or she
22 knowingly sells a firearm to a person under indictment?
23          **MR. SCHMID:**  I haven't studied all of the laws with
24 respect to a federal firearms dealer.
25          **THE COURT:**  I know I'm coming from a perspective that

**1** wasn't briefed.  So if you don't know, that's fine.

**2**             **MR. SCHMID:**  But I might be able to make a few

**3** preliminary comments, Your Honor.  And if you want supplemental

**4** briefing on this, I'm very happy to provide it.

**5**             I would think that the same kinds of arguments

**6** available to Mr. Holden would be available to the federal

**7** firearms dealer.  That's my initial reaction.

**8**             **THE COURT:**  Well, that's where I wanted to see your

**9** position, because **Heller** and **Bruen** didn't establish a right to

**10** sell a firearm.  And obviously the dealer has got the right to

**11** possess it.  We know that.

**12**             But wouldn't there have to be -- wouldn't **Heller** have

**13** to reach the sale as well as the possession?

**14**             **MR. SCHMID:**  Your Honor, I think it would go to how

**15** the regulations are written for the firearms dealer.

**16**             If they're written consistent with 922(a)(6) -- and

**17** apologize for not knowing this.

**18**             **THE COURT:**  Well, no.  I know this wasn't briefed.

**19** That's fine.

**20**             **MR. SCHMID:**  But if they're written consistent with

**21** 922(a)(6), that it's dependent on it being material to the

**22** lawfulness of the sale, then I don't think the government could

**23** properly prosecute the firearms dealer.

**24**             If, on the other hand, the firearms dealer -- it's

**25** written in a pure regulatory perspective in the sense that the

**1** regulation says X, you can't do Y, and it's not with regard to
**2** the lawfulness of the sale, then I think the firearms dealer
**3** could be prosecuted if he sells to someone who has told them
**4** that they're under criminal indictment.  But, again, it depends
**5** on how the statutes are written.
**6**          I agree with you that **Heller** and **Bruen** do not provide
**7** a constitutional protected -- presumptively protected right to
**8** a firearms dealer to sell a firearm.  I think that's right.
**9** But **Heller** and **Bruen** made clear that unless the government can
**10** prove a regulation consistent with and close to the regulation,
**11** the current regulation at issue, an individual's right to
**12** receive, keep, and to bear arms cannot be abridged in any way.
**13**          Thank you, Your Honor.
**14**          **THE COURT:**  Thank you, Mr. Schmid.
**15**          Mr. Gabrielse.
**16**          **MR. GABRIELSE:**  Thank you, Your Honor.  Hopefully,
**17** fairly briefly, because, for the most part, I would like to
**18** rely on the government's pleading in this case.
**19**          But to address the point that you just raised, yes,
**20** Section 922(d) prohibits people from selling firearms to
**21** prohibited persons.  922(d)(1) specifically applies to persons
**22** under indictment.
**23**          In other words, the FFL, the gun shop, is not legally
**24** permitted to sell to a person with reason to believe that that
**25** person is under a felony indictment or information.

**1**         The defendant's position that he should be allowed to
**2**  possess or receive firearms regardless of his status with a
**3**  pending case is a step different than what the Court brought
**4**  up.
**5**         There has been no Supreme Court -- and as far as I'm
**6**  aware, no circuit court -- that has ever held that, even if a
**7**  person has the right to possess a firearm, that it is somehow
**8**  unconstitutional for Congress to prohibit federally licensed
**9**  dealers from selling to certain people.  That's the commerce
**10** part of it, not dealing with the possession.
**11**        Indeed, I believe it was in the **Quiroz** case that one
**12** of the explanations that that district court gave for finding
**13** 922(n) unconstitutional was that because a person could -- no.
**14** I'm wrong.  It was in a recent obliterated serial number gun
**15** case, but also now a hot topic.
**16**        There was a hypothetical about a man who acquired a
**17** gun legally, scratched off the serial number, died and passed
**18** the gun to his daughter.  So his daughter now came into
**19** possession of a gun that had a serial number scratched off.
**20** That's dealing with possession of firearms and when they may or
**21** may not be constitutionally regulated.
**22**        922(d) prohibits the dealer from selling the gun.  To
**23** enforce that, the dealer has to ask questions, and a buyer has
**24** to be truthful.  That's the whole point of (a)(6).
**25**        So other than addressing that, I prefer to stand on

```
 1  the government's pleading, Your Honor.
 2            THE COURT:  Thank you.
 3            Well, you've raised an interesting question and a
 4  question that is probably being argued in some other district
 5  court even as we speak.  Well, maybe not, because only the
 6  Eastern Time zone is hearing arguments at this point.
 7            I'll get a ruling out as soon as possible.  I think
 8  this will just be one of the earlier rulings on this topic as
 9  we move along and see what's left of 922.
10            Oh, I think I can say this.  If you had told me
11  before **Heller** that I would ever hear an argument based on the
12  plain text of the Second Amendment, I would have bet against
13  it, but here we are.
14            I'll get a ruling out to you as quickly as I can.
15  Thank you.
16            MR. SCHMID:  Thank you, Your Honor.
17            (Proceedings concluded.)
18                            **CERTIFICATE**
19     **I, DEBRA J. BONK, certify that the foregoing is a**
20  **correct transcript of the record of proceedings in the**
21  **above-entitled matter.**
22         **DATED THIS 14th DAY OF DECEMBER, 2022.**
23                           **S/S DEBRA J. BONK**
24                           **DEBRA J. BONK**
                             **FEDERAL CERTIFIED REALTIME REPORTER**
25
```