UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

UNITED STATES OF AMERICA,

Plaintiff,

v.

CAUSE NO. 3:22cr30 DRL

JOHN HOLDEN,

Defendant.

## SENTENCING MEMORANDUM

On August 11, 2021, John Holden lied on an ATF form to acquire a firearm by saying he wasn't under indictment when he was. He pleaded guilty to the indictment's sole count—making false statements during acquisition of a firearm. *See* 18 U.S.C. § 922(a)(6).

## SENTENCING GUIDELINES

The court must first calculate the guideline range correctly, then decide what sentence is right and reasonable for this defendant. *Dean v. United States*, 581 U.S. 62, 67 (2017); *United States v. Swank*, 37 F.4th 1331, 1334 (7th Cir. 2022). The 2023 guidelines apply. *See Peugh v. United States*, 569 U.S. 530, 537-38 (2013). Without objection, the court adopts as its findings ¶¶ 1-79 of the revised presentence report.

Mr. Holden starts at level 12. U.S.S.G. § 2K2.1(a)(7). He clearly accepted responsibility, so his offense level concludes at level 10. U.S.S.G. § 3E1.1. His two criminal history points place him in criminal history category II where the guidelines recommend a sentencing range of 8-14 months, U.S.S.G. chap. 5A, below the statutory maximum of 10 years, 18 U.S.C. § 924(a)(2).

## DISCUSSION

The court decides the sentence under 18 U.S.C. § 3553(a) and *United States v. Booker*, 543 U.S. 220 (2005). Turning to the statutory factors, the court must arrive at a reasonable sentence—one sufficient but not greater than necessary to satisfy the statute's purposes. 18 U.S.C. § 3553(a).

Section 922(a)(6) was enacted to help keep lethal weapons out of the hands of criminals, dangerous felons, drug addicts, and others whose possession historic tradition under the Second Amendment outlawed. *See Huddleston v. United States*, 415 U.S. 814, 824-25 (1974); *see also N.Y. State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111, 2129-30 (2022). While under indictment for a March 2021 battery-of-a-police-officer felony charge, Mr. Holden lied about this fact on an ATF form to procure a firearm. He knew his answer was false because he had been involved in the state court proceedings, including attending a hearing the month before his purchase. *See* 18 U.S.C. §§ 3553(a)(1), (a)(2)(A).

Mr. Holden is different than many § 922(a)(6) offenders. *See* 18 U.S.C. §§ 3553(a)(1), (a)(6). First, it seems he was purchasing the firearm for himself rather than intending to procure it for a known felon or other proscribed person. Second, he only tried to purchase one firearm on one occasion when the court typically sees offenders purchasing many on several occasions. Third, he never actually acquired the firearm, so there was none that ended up the streets or used in criminal activity. These features tend to position Mr. Holden at the lower end of the culpability spectrum for this crime. *See* 18 U.S.C. §§ 3553(a)(1), (a)(2)(A).

That said, at age 22, Mr. Holden has a worrisome association with firearms already. *See* 18 U.S.C. § 3553(a)(1). He falls in criminal history category II—itself more unusual than not for this type of offense—and he does so only because he purchased a firearm despite being prohibited from possessing one on pretrial diversion in 2021. *See* 18 U.S.C. §§ 3553(a)(1), (a)(6). He also suffered a self-inflicted gunshot wound to his hip later that same year—a fact he might contest but for both law enforcement and medical records reporting it just so. Now he faces a firearm charge in state court after law enforcement discovered a loaded gun hidden in his car after a traffic stop in September 2023 and when he was still under this federal indictment since July 2023 (after it had been reinstated).

Wisely consulted, the guidelines oft promote uniform sentencing practices, though these features already illustrate the importance of tailoring a sentence to this defendant as he stands today. *See* 18 U.S.C.

§ 3553(a)(6); *Pepper v. United States*, 562 U.S. 476, 487 (2011). Mr. Holden comes from a hardworking home. He always had what he needed growing up. He got good grades in school. He played sports. He attended a few months of college. His work history was sporadic until his pretrial supervision here when he secured good employment, particularly since December 2023. He says he has secured a second job too. His commitment to working has even survived the repossession of his car. He hopes to attend Full Sail University—a former recording studio turned accredited university—to study film production and to leverage his current employer's educational benefits. *See* 18 U.S.C. § 3553(a)(1).

As a young boy and teenager, Mr. Holden worked to build up his community. He participated in a marathon for charity, participated in the Bethel Summer of Service program for three years, volunteered to paint houses, cut grass, and wash cars, and eventually joined 100 Black Men of Greater South Bend—an important organization dedicated to improving communities and enhancing educational and economic opportunities for all African Americans. It is difficult to understand his sudden shift to crime at age 20 given the sharp contrast to his upbringing and record of success and service. *See* 18 U.S.C. § 3553(a)(1).

Mr. Holden needs a firm reset and restoration of his pre-2021 perspective of the law. *See* 18 U.S.C. § 3553(a)(2)(A). Deterrence can come in many forms, and collaterally his first felony will eliminate his ability to purchase or possess a firearm from now on. *See* 18 U.S.C. §§ 3553(a)(2)(B), (a)(3). Despite his poor record before, he has proven amenable to federal supervision. He slipped twice by testing positive for THC a handful of months after his indictment was reinstated, though this seemingly occurred because he used legally purchased vape pens. He course-corrected as instructed by probation and has since tested negative. *See* 18 U.S.C. § 3553(a)(1).

Mr. Holden is eligible for probation by law. *See* 18 U.S.C. § 3561(c)(1); *see also Hughes v. United States*, 584 U.S. 675, 680-81 (2018); U.S.S.G. §§ 5B1.1, 5B1.3(a)(2), 5C1.1(c)(3). Federal goals will be met by a probationary term of 12 months, with 6 to be served on home detention while electronically monitored—a sentence that on this record avoids unwarranted sentencing disparities among similarly-

situated defendants and promotes deterrence. *See* 18 U.S.C. §§ 3553(a)(2)(B), (a)(6); *see also Rita v. United States*, 551 U.S. 338, 382 (2007). He will be required to perform 100 hours of community service as an additional condition of probation—consistent with the law and hopefully to restore his perspective of service. *See* 18 U.S.C. §§ 3563(a)(2), (b)(12).

Mr. Holden cannot pay the fine recommended by the guidelines even if afforded the most generous of installment payment schedules, so the court imposes no fine. A special assessment of $100.00 is mandatory. 18 U.S.C. § 3013(a)(2)(A).

SENTENCE

Accordingly, it is the court's judgment that the defendant, John Holden, is hereby sentenced to a probationary term of 12 months, with the first 6 months to be served on home detention.

While on probation, he must comply with the terms of supervision set forth in ¶¶ 80-91 of the revised presentence report, as amended here, which the court incorporates as part of this sentence having made an independent judgment that they should be imposed. After notice and an opportunity to consult and object, the court amended these conditions as follows:

86. You must not travel knowingly outside the federal judicial district for the Southern District of Indiana without the permission of the court. Alternatively, the probation officer will grant such permission when doing so will reasonably assure the probation officer's knowledge of your whereabouts and that travel will not hinder your rehabilitation or present a public safety risk. *The court proposes this condition because supervision can't be effective if the probation officer doesn't know where to find the defendant. See United States v. Miller, 641 F. Appx. 563, 566-67 (7th Cir. 2016) (affirming this condition). . . .*

92. You must serve a 6-month term of home detention to begin within 10 days of today's judgment, with electronic monitoring (or an equally effective alternative form of surveillance, to ensure compliance with this condition) at your own expense through participation in a co-payment program administered by the probation office. During this time, you must remain at your place of residence except for employment, educational coursework, religious services, medical appointments, community service, or at times specifically authorized in advance by the probation officer. Failure to pay these fees will not be grounds for imprisonment unless the failure is willful. *This condition is imposed as a substitute for imprisonment. It also reduces the risk of recidivism and provides public protection and defendant rehabilitation.*

93.     You must perform 100 hours of community service as approved and directed by the probation officer. *This condition is imposed to provide the defendant rehabilitation and a sense of purpose. Post-conviction risk assessment research indicates that community service reduces the risk of recidivism and promotes pro-social relationships that are conducive to a law-abiding lifestyle.*

The defendant expressly waived reading of the other supervisory conditions. The court directs the probation officer to provide the defendant with a written statement of all conditions.

The court imposes no fine. The defendant must pay to the United States a special assessment of $100.00, which is due immediately.

SO ORDERED.

March 29, 2024                              s/ Damon R. Leichty
                                           Judge, United States District Court


cc: J. Holden